IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARY C. BAILEY, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. CIV-10-227-SPS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

The claimant Mary C. Bailey requests review of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act pursuant to 42 U.S.C. § 405(g) . The claimant appeals the decision of the Commissioner and contends that the Administrative Law Judge ("ALJ") committed error in determining that she was not disabled. As discussed below, the Commissioner's decision is REVERSED and the case is REMANDED to the ALJ for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born on September 16, 1959, and was fifty years old at the time of the administrative hearing. She has a GED, certification as a medication aide (Tr. 28) and past relevant work as a care giver and medication aide (Tr. 14). The claimant initially claimed inability to work since August 1, 2007, but her onset date was amended to March 16, 2009 at the administrative hearing (Tr. 22). The claimant alleges that she is unable to work because of heart problems and severe depression (Tr. 93).

### Procedural History

On February 27, 2008, the claimant applied for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her application was denied. ALJ Norman R. Buls conducted a hearing and determined that the claimant was not disabled in a decision dated January 22, 2010. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had severe impairments (depressive disorder, osteoarthritis, and obesity) but retained the residual functional capacity ("RFC") to perform a range of light work, *i. e.*,

she could lift/carry up to ten pounds frequently (twenty pounds occasionally), and stand/walk/sit for six hours in an eight-hour work day, but should avoid bending, stooping and squatting, unprotected heights, and exposure to moving machinery (Tr. 10, 12).  The ALJ concluded that although the claimant could not return to any past relevant work, she was nevertheless not disabled according to the Medical Vocation Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2 (the "grids"), specifically Medical Vocational Rule 202.21 (Tr. 15).

## Review

The claimant contends the ALJ erred: (i) by failing to properly assess her RFC; (ii) by determining that she was disabled by conclusive application of the grids; and, (iii) by failing to properly analyze medical evidence, *e. g.*, treatment notes from psychologist Dr. Cornelius Cuza, Ph.D.  The undersigned finds the claimant's contentions persuasive.

The medical evidence reveals that claimant has suffered from depression since at least July 6, 2007 (Tr. 181).  At that time, the claimant was noted to be crying with a dissonant affect and "anger just below [the] surface" (Tr. 181).  Less than a month later, claimant's depression was not resolving despite the claimant's medication (Tr. 180), and her depression was noted in January and February 2008 to be "agitated" (Tr. 173-74). The claimant underwent a consultative examination by state psychologist Dr. C. Valette, Ph.D. on May 17, 2008 (Tr. 192-93).  At that time, Dr. Valette noted that claimant reported suffering from depression for "a long time," and presented as irritable (Tr. 192). Because of Dr. Valette's observations of claimant's appearance, *i. e.*, highlighted hair, painted fingernails, and suntanned skin, Dr. Valette wrote that she "seemed to exaggerate

her symptoms" (Tr. 193).  Dr. Valette also found that claimant's thought processes were logical and her focus was adequate (Tr. 193).  The claimant's GAF was assessed to be 70, and Dr. Valette remarked that it was "highly likely that there are no mental restrictions regarding this claimant" (Tr. 193).

On October 22, 2008, the claimant presented to Imperial County Behavioral Health as a result of a suicide attempt "by excessive ingestion of medications" (Tr. 248).  During this initial consultation, she was evaluated by Florentino Olivas, ACSW-PSW II and Cornelius Cuza, Ph.D., who noted that claimant displayed a dysphoric/irritable mood, sad affect, crying spells, slouched posture and self-defeating thoughts (Tr. 248).  Dr. Cuza also noted that claimant was extremely impaired in activities of daily living (low motivation, crying spells, and depressed mood), social function (isolative an disconnected from friends and family), and concentration, persistence and pace (blank spells, indecisiveness, and memory problems), and it was similarly noted that claimant lack motivation to leave her home (Tr. 249-50).  Her GAF was assessed at 50 and her prognosis listed as fair (Tr. 254).

The ALJ specifically found at step two that the claimant's depression was a severe impairment.  He did not, however, include any mental limitations in the claimant's RFC, despite also finding that she had mild difficulties with concentration, persistence or pace and moderate difficulties with social functioning (Tr. 10-11).

A severe impairment at step two is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  Thus,

when an ALJ finds an impairment to be severe at step two, he must thereafter account for it by including corresponding limitations in the claimant's RFC at step four or explaining how the impairment became so insignificant that no limitations were required.  *See, e. g., Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) ("At the very least, the ALJ should have explained how a 'severe' impairment at step two became insignificant at step five.").  In this case, the ALJ recited findings by state agency consultant Dr. Valette and concluded by saying that "[i]n terms of the claimant's depression, it does not appear to significantly affect her daily activities or mental functioning." (Tr. 13).

The apparent inconsistency between this latter conclusion by the ALJ and his step two determination that the claimant's depression was severe is well worth noting here. *See Timmons*, 118 Fed. Appx. at 353 ("The second problem with [the ALJ's] decision arises because this finding of severity appears inconsistent with his conclusion that the eye impairment would pose only an 'insignificant' effect on his ability to do the full range of sedentary work.").  *See also Baker v. Barnhart*, 84 Fed. Appx. 10, 13 (10th Cir. 2003) ("The ALJ's step-two finding makes it impossible to conclude at step four that her pain was insignificant[.]").  But in any event, the ALJ clearly provided no analysis of the impact of the claimant's depression on her ability to perform the activities necessary to do the work that he found she could do (as opposed to her "daily activities").

Because the ALJ failed to properly account for the claimant's severe depression in formulating her RFC at step four, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis.  If such analysis on remand results in

any adjustment to the claimant's RFC, the ALJ should then re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the decision of the Commissioner is therefore not supported by substantial evidence. The decision of the Commissioner is therefore REVERSED, and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 29th day of September, 2011.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**